UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Computer Forensic Services, Inc. | Civil Action No.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Wiand Guerra King P.A., | |
| Defendant. | |

Plaintiff Computer Forensic Services, Inc. (hereafter, "CFS") for its Complaint against Defendant Wiand Guerra King, P.A., (hereafter, "WGK") states and alleges as follows:

## Introduction

WGK, a law firm in Florida, engaged CFS to "provide digital forensic and other investigative services." The Parties executed an "Engagement Agreement" (hereafter, the "Agreement") setting the terms, conditions, and fees for CFS's services on December 11, 2015. CFS performed services under the Agreement as requested and billed WGK at the agreed upon rates. Pursuant to the "General Terms & Conditions" of the Agreement, CFS has withheld all reports, data, and equipment while awaiting payment.[1] Instead of paying CFS or disputing the fees within the deadline provided in the Agreement, WGK has

---

[1] Under the General Terms & Conditions, "CFS reserves the right to submit all reports and data for review until after payment of the invoice for such services is received." Additionally, "CFS reserves the right to declare as abandoned any and all date and devices a customer has placed in our custody for a period greater than 60 days."

stated its intent to motion a Florida state court for an order 1) forcing the release of CFS's work product without payment, and 2) renegotiating the fees for CFS's services.

The Agreement provides exclusive jurisdiction to an arbitrator in Hennepin County, Minnesota. WGK's threatened lawsuit would irreparably harm CFS by depriving it of its contractual right to have this dispute arbitrated privately in Minnesota. Accordingly, CFS respectfully seeks a declaratory judgment under 28 U.S.C. § 2201(a), that any dispute arising out of or relating to the Agreement between CFS and WGK, including the two claims referenced herein, must be resolved in arbitration in Hennepin County, Minnesota.

## Parties

1. Plaintiff Computer Forensic Services, Inc. is a Minnesota corporation with a principal place of business at 601 Carlson Parkway, Suite 1250 in Minnetonka, Minnesota.

2. Defendant Wiand Guerra King, P.A. is a professional association with a principal place of business at 5505 W Gray Street, Tampa, Florida. The firm's only other office is in Palo Alto, California.

## Venue & Jurisdiction

3. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) as there is complete diversity of citizenship between the Parties and the amount in controversy, exclusive of costs and interest, exceeds $75,000.

4. The Agreement is incorporated into this Complaint by reference. *See Moses.com Sec., Inc. v. Comprehensive. Software Sys., Inc.*, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (acknowledging that press release referred to in complaint was incorporated into complaint by reference). It provides, "Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Hennepin County, State of Minnesota before one arbitrator."

5. The Court has subject matter jurisdiction under 28 U.S.C. § 2201(a) in that a justiciable and actual controversy now exists with respect to the arbitrability of WGK's alleged claims against CFS.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the parties consented to jurisdiction in Minnesota in the Agreement that governs this dispute. Further, a substantial portion of the events giving rise to the claim occurred in this judicial district; the services provided under the Agreement occurred in Minnesota and the data, reports, and equipment now in controversy are housed in Minnesota.

**Facts**

I.   *The Engagement Agreement*

7. CFS performs electronic discovery, forensic analysis, litigation support, and advisory and consultation services.

8. On December 11, 2015, the law firm of WGK engaged CFS "to provide digital forensic and other investigative services as requested," The Agreement provided that those services could include "imaging, onsite response, data analysis and consulting, expert witness testimony, data storage, and other services to be determined by the parties."

9. The Agreement further stated the regular and priority hourly rates, the rates for providing specific types of services and the description of those services, and the fees for data storage services. CFS agreed that it would "periodically submit invoices to WGK regarding any and all services performed or costs incurred on the project."

10. The Agreement mandates that "[t]he parties will abide by the prices, terms and conditions set out in the agreement" and allows for the compliant party to collect all costs association with collection of the fees, including attorney's fees and post-judgement fees and costs.

11. The "General Terms & Conditions" of the Agreement specify the manner and timeline for disputing invoices. "CFS must be notified in writing of any and all disputes regarding an invoice within 15 days of the date of the disputed invoice. CFS billing records are the default record establishing any and all payment terms for an invoice. WGK acknowledges that if no disputative writing is received by CFS within the 15 day period then all amounts under an invoice are due and owed to CFS."

12. The Agreement explicitly allows CFS to withhold its work product and the data until payment of the invoices is made: "CFS reserves the right to submit all reports and data for review until after payment of the invoice for such services is received."

13. The Agreement further provides that "CFS reserves the right to declare as abandoned any and all data and devices a customer has placed in our custody for a period greater than 60 days."

14. On December 11, 2015, Burton W. Wiand signed the Agreement, which stated "I hereby agree and accept on behalf of Wiand Guerra King P.A. ("WGK") the prices, terms and conditions, as set forth above in the agreement letter."

15. The only signatories to the Agreement are CFS and WGK.

II.   *CFS Completes Services per the Agreement; WGK Refuses to Pay*

16. CFS provided regular invoices to WGK after starting the project. Invoices were sent on the following dates: December 14, 2015; December 21, 2105; January 5, 2016; January 15, 2016; January 25, 2016; February 8, 2016; February 24, 2016; March 17, 2016.

17. WGK did not dispute in writing any of the December through February invoices within 15 days—and has not to date, disputed the March 17, 2016 invoice.

18. WGK has not attempted to dispute any specific charges; it has only made oblique references to the bill being "too high."

19.   The first time that WGK communicated its dissatisfaction with a CFS bill was on March 16, 2017.

20. On March 16, 2016, Gianluca Morello, a shareholder of WGK, began emailing Mark Lanterman, about the fees. Morello writes: "Mark, as you know, the Receiver believes your firm's fees are too high for this project. Would you like to propose a discounted amount to try to resolve this?"

21. Lanterman responded on the evening of March 16, 2016, stating: "This is the first time that either you or Jordan have expressed to me a belief that our fees are "far too high". Rather, you have continually stated that the delays [for payment] are attributable to the payment schedules of the court. This evinces a lack of good faith. You agreed to our fees when you signed our contract and we completed the work you requested. As evidenced by your last email, you expected CFS to surrender the data while you had no intention of paying our invoices, which were issued according to our agreement."

22. Prior to March 16, 2016, CFS had invoiced WGK for $40,925 in services rendered. CFS had previously stated to WGK that it would discount the storage fees contingent upon the timely payment of the invoices.

23. After learning that WGK intended to force CFS in to court rather than timely pay the invoices, CFS notified WGK that it would be rescinding the discount as no payments had been made and WGK was not in compliance with the Agreement. Lanterman states in his email to Morello, "CFS is rescinding our previous discount of $65,850.00 and will be issuing an invoice to you in the morning."

24. After Lanterman sent this email, he discovered that the initial calculation did not include several devices also being stored for WGK. The invoice CFS sent to WGK the following day, March 17, 2015, reflected the full balance owed of $110,850.[2]

25. The total outstanding balance owed to CFS by WGK under the Agreement is $151, 775. WGK has been invoiced for this amount.

### III.   *Arbitration and Forum Selection Clause*

26. The Agreement includes a forum selection clause and a mandatory arbitration clause. Specifically, the Agreement provides that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Hennepin County, State of Minnesota before one arbitrator."

27. Despite the clear terms of the Agreement requiring that any future dispute be resolved through arbitration in Hennepin County, Morello stated in a March 16, 2016 email that "If we cannot resolve this matter this week, we will file a motion with the Court here in Florida presiding over the Receivership so the Court can decide what a reasonable fee would be."

28. Filing this motion in a Florida court to attempt to renegotiate the terms and rates agreed previously agreed upon would breach the explicit Agreement to arbitrate any dispute between the Parties related to or arising out of the Agreement.

---

[2] This balance includes a charge that will incur on March 21, 2016 as permitted in the Engagement Agreement.

29. It would also irreparably harm CFS by denying it the privacy of arbitration that the Parties bargained for and consented to in the Agreement.

## Count I
## Declaratory Judgment—Arbitration

30. CFS repeats and realleges each of the preceding Paragraphs as if fully set forth herein.

31. An "actual controversy" within the meaning of 28 U.S.C. § 2201(a) exists between CFS and WGK concerning whether WGK's claims must be arbitrated.

32. Under 28 U.S.C. § 2201(a), CFS is entitled to a declaratory judgment that under the Parties' Agreement, WGK must arbitrate any dispute with CFS arising out of or relating to the December 11, 2015 Agreement between the Parties.

## Prayer for Relief

CFS respectfully prays that the Court:

1. Enjoin WGK and its attorney(s) or agents from filing, or threatening to file, any alleged claim or defense against CFS in any forum except as provided in the Agreement (namely, an arbitration in Hennepin County, Minnesota);

2. Enter a judgment declaring that any claim or defense that WGK has against CFS arising out of or relating to the December 11, 2015 Agreement between the Parties must be arbitrated as required by the Parties' Engagement Agreement;

4. Order the Parties to confidentially arbitrate WGK's alleged claims against CFS within 90 days of the Court's Order;

5. Award CFS its costs and disbursements in connection with this action as provided for in the Agreement; and

6. Grant CFS all such other and further relief as this Court may deem just and equitable.

DATED:  March 18, 2016                         Respectfully submitted,

**ROBINS KAPLAN LLP**

By: */s/ Christopher W. Madel*
      Christopher W. Madel,  (230297)
      Samantha J. Ellingson,  (0397448)

800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402
612 349 8500
CMadel@RobinsKaplan.com
SEllingson@RobinsKaplan.com

**Attorneys for Plaintiff**